FILED _____ LODGED
_____ RECEIVED _____ COPY

JUL 30 2021

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE

UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF ARIZONA

TUCSON DIVISION

| NATHANIEL E. JUMPER, Plaintiff, Pro Se, | Case No. CV-21-304-TUC-JCH-PSOT |
|---|---|
| vs. | COMPLAINT FOR DAMAGES / BIVENS ACTION |
| UNITED STATES OF AMERICA, Et. Al., Defendant(s) | Pursuant To (28 U.S.C. §§ 1346(b), 2679(b)(1)) |

COMES NOW, Nathaniel E. Jumper, plaintiff, pro se moves the Court pursuant to Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L. Ed. 2d 619 (1971) and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2679(b)(1) and names the following

pg. 1

defendants; The United States of America, Warden Howard, Case Manager Miranda, Lieutenant (Lt.) Alcantar, Lt. Banuelos, Lt. Falconer, Correctional Officer (C/O) Wade, C/o Rush, C/o Rodriguez, C/o campoy, Medical Technician (M.T.) Potter, M.T. Quezada, M.T. Williams and other Unknown Agents of the United States of America. The plaintiff complains that the foregoing defendants did cause the plaintiff injuries and damages through negligence, deliberate indifference and the unnecessary and wanton infliction of pain while acting in their official capacity and within the scope of their employment, all in violation of Federal Statutes, Codes of Federal Regulation and Federal Bureau of Prisons (F.B.O.P.) policies and procedures and the laws of the State of Arizona and the plaintiff's 8th Amendment "right to be free from harm and cruel and unusual punishment" stemming from "unnecessary and wanton infliction of pain", Therefore the foregoing named defendants have incurred liability for civil damages and in support the plaintiff claims the following facts:

pg. 2

COMPLAINT

1) On March 4th, 2021 at the United States Penitentiary (U.S.P.) in Tucson, Arizona, in Unit C-2, an incident involving the plaintiff, multiple unnamed prisoners, the consumption of alchohol and disruptive behavior required the agents of the United States (U.S.) Government, among whom were named and unnamed defendants and whom acted in their Official and Individual capacity, within the scope of their employment.

2) The plaintiff was in his cell during the incident when the Housing Unit was locked down because staff suspected a fight had occured. The Unit Correctional Officers, c/o Campoy and c/o Rodriguez and Lt. Alcantar conducted a cell to cell visual check of all prisoners in the Unit in an attempt to discover evidence of any fighting injuries. The above defendants removed the plaintiff and his unnamed cellmate, conducted the visual check of the plaintiff, discovered no injuries and secured the plaintiff in his cell. The defendants continued their inspection of the other prisoners then returned to the plaintiffs cell,

pg. 3

(Cont.) removed the plaintiff and his cellmate from their cells and secured them in the Unit's showers. C/o Rodriguez and C/o Compoy then conducted a search of the plaintiff's cell, discovering two plastic bags they suspected of containing residue of an alchoholic beverage.

3) Following the search of the plaintiff's cell, C/o Rodriguez and C/o Compoy conducted a breathylizer test of his plaintiff in the Unit's showers. The plaintiff tested positive for having consumed alchohol. At that time Lt. Alcantar began to render breathylizer tests of every prisoner in the Unit. As individuals tested positive they were removed from their cells and secured in the Unit's showers. During the testing, C/o Compoy and C/o Rodriguez arrived at a particular cell. The defendants ordered the prisoner's, in this particular cell, to submit to hand restraints. The prisoners refused and began to destroy any evidence of the consumption of alchohol.

pg. 4

4) During the previously described encounter the plaintiff engaged in disruptive behavior by repeatedly kicking the door to the shower he was locked in. The prisoners in the particular cell, that had refused the defendant's orders to submit to hand restraints, continued to do so. This required the response of additional Correctional Officers who entered the Unit. The refusing prisoners eventually submitted to hand restraints and were removed from the Housing Unit. During this whole encounter the plaintiff continued to kick the door to the Unit's shower.

5) While the plaintiff continued the disruptive behavior Lt. Alcantar, C/o Compoy and C/o Rodriguez approached the shower in which the plaintiff was locked. Lt. Alcantar asked the plaintiff, "What the fuck is your problem?". A brief conversation ensued while defendant Lt. Banuelos stood nearby and observed. Lt. Alcantar ordered the plaintiff to submit to hand restraints. The plaintiff refused and stated, "Bring the team.", in reference to a Cell Extraction

pg. 5

(cont.) and Rescue Team, Lt. Alcantar then responded, "I don't need a fucking team.", and directed C.M. Miranda, whom also stood by, to unlock the shower door in which the plaintiff was held. By this act Lt. Alcantar, in her official capacity, violated the Codes of Federal Regulation and F.B.O.P. policies and procedures through willful negligence.

6) When the door opened the plaintiff threw himself to the floor at the same time that C.M. Miranda attempted to spray the plaintiff with Oleorisen Capsicum (O.C.) spray. Because the plaintiff's action was so quick he avoided C.M. Miranda's attempt to spray him and C.M. Miranda inadvertantly sprayed Lt. Alcantar in her face with the O.C. spray. The plaintiff, then, willingly submitted to hand restraints and leg restraints. The plaintiff was then escorted out of the Unit by defendants C/o Rush and other Unknown Agents of the Government to the Segregated Housing Unit (S.H.U.)

pg. 6

7) Once the defendant's and the plaintiff arrived at the prison's S.H.U. C/o Wade, acting in his official capacity and within the scope of his employment, began to direct the handling of the plaintiff. The plaintiff was placed in a holding Cell and ordered by C/o Wade to turn and face the defendant. The plaintiff complied with C/o Wade's orders. The defendant then began to destroy the plaintiff's personal property by cutting off his shirt. The plaintiff was looking down at the scissors, biend used by C/o Wade, when the defendant, while acting in his official Capacity and in violation of the laws of the State of Arizona and the plaintiff's clearly established constitutional right to be free from the "Unnessessary and wanton infliction of pain", did violently grab hold of the plaintiff's throat and shoved the plaintiff's person against the wall. The plaintiff was shocked by C/o Wade's assault because he had been compliant with all the defendant's orders.

pg. 7

8) Once the defendant, C/o Wade, removed the plaintiff's shirt he ordered the plaintiff to turn away and face the wall. The defendant then tells the plaintiff that he is about to remove the plaintiff's hand restraints and to not move. The plaintiff relaxed his whole body and the defendant removed the hand restraints. C/o Wade ordered the plaintiff to face him again, to which the plaintiff complied, then the defendant applied a different set of hand restraints on the plaintiff's wrists.

9) After applying the hand restraints C/o Wade acting in his official capacity and in violation of the laws of the State of Arizona and the plaintiff's Constitutional right under the 8th Amendment "to be free from harm and cruel and unusual punishment" stemming from "unnecessary and wanton infliction of pain" did tighten the hand restraints upon the plaintiff's wrists to the point of causing the plaintiff pain and serious and permanent injuries to his hands and wrists.

pg. 8

10) Next the defendant, C/O Wade, acting in his official capacity and in violation of the laws of the State of Arizona and the plaintiff's Constitutional right under the 8th Amendment "to be free from harm and cruel and unusual punishment" stemming from "unnecessary and wanton infliction of pain" did apply a chain around the plaintiff's abdomen and tightened it upon the plaintiff's abdomen and thereby caused the plaintiff pain and serious and permanent injury to his abdomen and lower back.

11) The plaintiff then complained to C/O Wade about the tightness of the hand restraints and the chain around his abdomen and complained of pain but was ignored by the defendant. C/O Wade then attaches the plaintiff's hand restraints to the abdominal chain with a device referred to as a "Black Box" and secures it in place with a padlock. The defendant then informs him that he is going to remove the plaintiff's pants and boxer shorts. C/O Wade performs this action and reclothes the plaintiff with

pg. 9

(cont.) paper pants. The plaintiff is then put into a restraint chair. C/o Wade then secures the plaintiff's legs to the restraint chair by applying velcro straps to the plaintiff's ankles. C/o Wade is then assisted by C/o Rush and an Unknown Agent of the Government who each secure one of the plaintiff's arms to the restraint chair by applying velcro straps to the plaintiff's wrists.

12) Once the plaintiff is secured in the restraint chair by the defendants, C/o Wade acting in his official capacity and in violation of the laws of the State of Arizona and the plaintiff's Constitutional right under the 8th Amendment "to be free from harm and cruel and unusual punishment" stemming from "unnecessary and wanton infliction of pain" did tighten the velcro straps securing the plaintiff's wrists and ankles thereby causing the plaintiff pain and permanent injury to his arms and ankles. The plaintiff then complained of

(cont.) serious pain to the defendants but was ignored.

13) The entire procedure of securing the plaintiff into the restraint chair was bieng observed by the defendant Lt. Merrill. This defendant acting in his official capacity and in violation of the laws of the State of Arizona and the plaintiff's 8th Amendment right "to be free from harm and cruel and unusual punishment" stemming from "Unnecessary and wanton infliction of pain" did physically inspect the plaintiff's restraints and by negligence and deliberate indifference ignored the tightness of the restraints, the plaintiff's complaint of serious pain and the plaintiff's complaint of not bieng able to breathe properly. Lt. Merrills only response to the plaintiff's complaints was, "It is not supposed to be Comfortable.".

14) Lt. Merrill then directs all the defendants involved in above explained procedure to exit the room and follows himself.

pg. 11

(Cont.) the plaintiff estimates that several hours pass with him alone in the cell in the restraint chair. During this time the pain through which the plaintiff suffered continued to increase. The defendant Lt. Falconer eventually enters the room to inspect the plaintiff's restraints. Lt. Falconer acting in his official capacity and in violation of the laws of the State of Arizona and the plaintiff's 8th Amendment right "to be free from cruel and unusual punishment" stemming from "unnecessary and wanton infliction of pain" did physically inspect the plaintiff's restraints and by deliberate indifference ignored the tightness of the restraints, the plaintiff's complaint of serious pain and the plaintiff's complaint of not bieng able to breathe properly. When the plaintiff asked Lt. Falconer to loosen the restraints the defendant refused. Lt. Falconer then exited the room.

15) Some time after Lt. Falconer exited the cell the defendant M.T. Quezada entered. This defendant checked the plaintiff's vitals then physically inspected the restraints securing the plaintiff in the restraint chair. M.T. Quezada acting in his official capacity and in violation of the laws of the State of Arizona and the plaintiff's 8th Amendment right "to be free from harm and cruel and unusual punishment" stemming from "unnecessary and wanton infliction of pain" did inspect the plaintiff's restraints and through deliberate indifference ignored the tightness of the restraints and the injuries occurring to the plaintiff and his complaint of pain and his complaint of an inability to breathe correctly. M.T. Quezada then left the room.

16) A couple of hours pass defendant Lt. Falconer returns to inspect the plaintiff's restraints. At this point the plaintiff's wrists and ankles had visibly swollen and

pg. 13

(cont.) he was in greater pain. The plaintiff, again, pleaded with Lt. Falconer to loosen his restraints. Lt. Falconer conceded and ordered an Unknown Correctional Officer to loosen the handcuffs restraining the plaintiff's wrists one click of the locking mechanism. Lt. Falconer acting in his official capacity, again, in violation of the laws of the State of Arizona and the plaintiff's 8th Amendment right "to be free from harm and cruel and unusual punishment" stemming from "unnecessary and wanton infliction of pain" did, again, ignore the injuries and pain being inflicted on the plaintiff by the tightness of the restraints. Lt. Falconer and the Unknown Agent of the Government then exited the room.

17) Some time later Lt. Falconer and an Unknown Medical Technician returned to the room. The two above defendants, again, in their official capacities ignored the pain and injuries inflicted upon the plaintiff by the tightness of his

(cont.) restraints in violation of the laws of the State of Arizona and the plaintiff's 8th Amendment rights. Lt. Falconer and the Unknown Medical Technician then exited the room.

18) A few hours later an Unknown Lieutenant acting in his official capacity as an Agent of the Government entered the room. This defendant in violation of the laws of the State of Arizona and the plaintiff's 8th Amendment Right did ignore the pain and injuries inflicted upon the plaintiff and refused the plaintiffs requests to loosen his restraints. This unknown Lieutenant then exited the room.

19) After the Unknown Lieutenant exited the room the plaintiff remained in his restraints until March 5th, 2021. During this overnight period the plaintiff was forced to urinate upon himself and the urine

pg. 15

(cont.) pooled around his feet and the restraint chair. At approximately the 24th hour in the restraints the defendants, Lt. Merrill and Warden Howard, entered the room. Both the defendants stood before the plaintiff in the puddle of plaintiff's urine. Warden Howard asks the plaintiff, "Are you ready to come out of that thing?"; in reference to the restraint chair. The plaintiff nods in the affirmative. The Warden Howard then asks the plaintiff if it is his urine that she is standing in and the plaintiff responds, "Yes.". Warden Howard then tells the plaintiff, "I do not appreciate you hitting my staff."; in reference to the incident on March 4th, 2021 involving Lt. Alcantar which led to the plaintiff's placement in restraints and restraint chair. However, a review of the Incident Report filed on March 5th, against the plaintiff, clearly states that the plaintiff made no physical contact with Lt. Alcantar. The plaintiff only attempted to avoid bieng sprayed with O.C. by C.M. Miranda. The plaintiff replied to Warden Howard, "I didn't touch

(cont.) anyone.". Warden Howard states, "You did."; in reply to the plaintiff. Following this encounter Warden Howard and Lt. Merrill acting in their official capacities and in violation of the laws of the State of Arizona and the plaintiff's 8th Amendment right "to be free from harm and cruel and unusual punishment" stemming from "unnecessary and wanton infliction of pain" and of Federal Statutes, Codes of Federal Regulation and F.B.O.P. policies and procedures did, through negligence and deliberate indifference, ignored the tightness of plaintiff's restraints, the plaintiff's complaint of severe pain and the plaintiff's complaint of not bieng able to breathe properly. The defendants then exited the room

20) At approximately 4:00 p.m. on March 5th, 2021 the defendants Lt. Woodbey and Lt. Banuelos entered the room. The plaintiff informed the defendants that he had been in the restraint chair for over 24 hours and pleaded to be let out. Lt. Woodbey and Lt. Banuelos acting in their

pg. 17

(cont.) official capacities and in violation of the laws of the State of Arizona and the plaintiff's 8th Amendment right "to be free from harm and cruel and unusual punishment" stemming from "unnecessary and wanton infliction of pain" did through deliberate indifference, ignored the tightness of plaintiff's restraints and the plaintiff's pain and injuries and ignored his plea for relief. The defendants then exited the room.

21) At approximately 6:00 p.m. the defendant Lt. Falconer returned and made the decision to release the plaintiff from the restraint chair. At this time, after 28 total hours in restraints, the plaintiff's wrists and hands are swollen to approximately twice the normal size. The chain securing the hand restraints to plaintiff's abdomen had caused the skin of plaintiff's abdomen to swell through and around the links of the chain. The plaintiff's ankles were also swollen to approximately twice the

pg. 18

(cont.) size. The plaintiff continued to be in severe pain and suffer injuries. The plaintiff is removed from the restraint chair by Unknown Agents of the Government under observation by Lt. Falconer. The plaintiff was unable to stand under his own strength and is lifted out of the restraint chair. Lt. Falconer, again, acting in his official capacity in violation of the laws of the state of Arizona and the plaintiff's 8th Amendment rights ignored the plaintiff's pain and injuries and ordered him to remain in the ambulatory restraints which were causing said injuries and pain.

22) The plaintiff finally had the ambulatory restraints removed from his wrists, abdomen and ankles at approximately 10:00 p.m. March 5th, 2021 after having been in the restraints for a total of 32 hours; having been placed in the restraints at approximately 2:00 p.m. March 4th, 2021. The Plaintiff

pg. 19

suffered temporary swelling of his wrist's, abdomen and ankles. The plaintiff suffered temporary blisters of his wrists, abdomen and ankles. The plaintiff showed these injuries to M.T. Potter on March 6th, 2021 and also complained of pain in his wrists, abdomen, lower back and ankles and a numbness and lack of mobility in his hands. M.T. Potter acting in his official capacity and through deliberate indifference ignored the plaintiff's serious medical needs. The Health Services Department of U.S.P. Tuscon has repeatedly ignored his complaints and requests for care through deliberate indifference.

23) The plaintiff has suffered permanent injuries to include but are not limited to permanent scarring on the plaintiff's wrists, abdomen and ankles; permanent numbness, tingling and lack of mobility in his hands. Pain in his

pg. 20

(cont.) lower back where the chain was secured about the plaintiffs' abdomen. The plaintiff also suffers from Post Traumatic Stress from the incident with symptoms to include but not limited to insomnia, nightmares and anxiety disorder.

## RELIEF

23) As relief the plaintiff requests the Court will award him the following compensatory and punitive damages against the defendant(s) in the following amounts:

A) Find the defendant United States of America liable for damages to the plaintiff in the amount of $1,000,000.⁰⁰ dollars.

B) Warden Howard liable for damages to plaintiff in the amount of $500,000.⁰⁰ dollars.

C) Case Manager Miranda is liable for damages to the plaintiff in the amount of $10,000.⁰⁰.

D) Lieutenant Alcantar is liable for damages to the plaintiff in the amount of 100,000.⁰⁰ dollars.

E) Lieutenant Banuelos is liable for damages to the plaintiff in the amount of 50,000.⁰⁰ dollars.

F) Lieutenant Falconer is liable for damages to the plaintiff in the amount of 250,000.⁰⁰ dollars.

G) Correctional Officer Wade is liable for damages to the plaintiff in the amount of $500,000.⁰⁰ dollars.

H) Correctional Officer Rush is liable for damages to the plaintiff in the amount of $250,000.⁰⁰ dollars.

I) Correctional Officer Rodriguez is liable for damages in the amount of $10,000.00 dollars.

J) Correctional Officer Compoy is liable for damages in the amount of $10,000.00 dollars

K) Medical Technician Potter is liable for damages in the amount of $100,000.00 dollars.

L) Medical Technician Quezada is liable for damages in the amount of $100,000.00

M) Medical Technician Williams is liable for damages in the amount of $100,000.00

N) Other Unknown Agents of the Government

pg. 23

(cont.)N.) are liable to the plaintiff for damages in the amount to be determined at trial.

THEREFORE, the plaintiff, pro se respectfully prays the Honorable Court will grant him any and all relief it deems justice so requires.

Respectfully Submitted,

July 27 2021
(DATE)

/s/ Nathaniel Jumper

NATHANIEL E. JUMPER

PLAINTIFF, PRO SE

REG. NO: 12208-062

UNITED STATES PENITENTIARY

P.O. Box 24550

TUCSON, AZ 85734

CERTIFICATE OF SERVICE

I, Nathaniel E. Jumper, plaintiff, pro se, a prisoner in the custody of the Federal Bureau of Prisons do declare under

pg. 24

(cont.) under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and that I mailed an original copy of this Complaint using first-class postage via the U.S. Postal Service to the following address:

U.S. District Court Clerk

U.S. Courthouse, Suite 1500

405 West Congress Street

Tucson, Arizona 85701-5010

And I placed this original copy into the prison mailing system on this 27th day of July (DATE) (MONTH), 2021.

Respectfully Submitted,

July 27, 2021 (DATE)     /s/ Nathaniel Jumper

NATHANIEL E. JUMPER

PLAWTIFF, PRO SE

REG. No: 12208-062

UNITED STATES PENITENTIARY

P.O. Box 24550

Tucson, Az 85734

pg. 25